UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

CHARLENE M. GIAMBRIONE,

                   Plaintiff,

      -vs-                  **No. 6:15-CV-06023 (MAT)**
                                   **DECISION AND ORDER**
CAROLYN W. COLVIN, ACTING
COMMISSIONER OF SOCIAL SECURITY,
                   Defendant.

_____

## I.   Introduction

Represented by counsel, Charlene M. Giambrione ("plaintiff") brings this action pursuant to Titles II and XVI of the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security ("the Commissioner") denying her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"). The Court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons discussed below, the Commissioner's motion is granted.

## II. Procedural History

The record reveals that in May 2012 and February 2013, respectively, plaintiff (d/o/b October 21, 1953) applied for DIB and SSI, alleging disability as of August 1, 2011[1] due to

_____

[1] Plaintiff's alleged onset date was later amended to February 4, 2012.

arthritis, spinal degeneration, high cholesterol, and sleep apnea. After her application was denied, plaintiff requested a hearing, which was held before administrative law judge Hortensia Haaversen ("the ALJ") on June 18, 2013. The ALJ issued an unfavorable decision on August 2, 2013. The Appeals Council denied review of that decision and this timely action followed.

## III. The ALJ's Decision

The ALJ followed the well-established five-step sequential evaluation promulgated by the Commissioner for adjudicating disability claims. See 20 C.F.R. § 404.1520. Initially, the ALJ found that plaintiff met the disability insured requirements of the Social Security Act through December 31, 2016. At step one, the ALJ determined that plaintiff had not engaged in substantial gainful activity since August 1, 2011, the original alleged onset date. At step two, the ALJ found that plaintiff suffered from the following severe impairments: bulging lumbar disc, with recent history of fractured coccyx/osteoarthritis of the right hip and bilateral knee; sleep apnea; and asthma. The ALJ found that plaintiff's "medically determinable mental impairment of depression [did] not cause more than minimal limitation in her ability to perform basic mental work activities and [was] therefore non-severe." T. 13. At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment.

Before proceeding to step four, the ALJ determined that plaintiff retained the residual functional capacity ("RFC") to perform medium work as defined in 20 C.F.R. §§ 404.1567(c) and 416.967(c) except that: she could lift and carry 50 pounds occasionally and 25 pounds frequently; she could stand or walk for about six hours in an eight-hour workday; she could sit for at least six hours in an eight-hour workday; and she must avoid dust, irritants, or tobacco which may exacerbate her asthma. After consulting with a vocational expert ("VE"), the ALJ found that plaintiff could perform her past relevant work as a property manager, customer service clerk, and rental agent. Accordingly, she found that plaintiff was not disabled.

## IV.  Discussion

A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by "substantial evidence" or if the decision is based on legal error. 42 U.S.C. § 405(g); see also Green-Younger v. Barnhard, 335 F.3d 99, 105-06 (2d Cir. 2003). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000).

### A.   Treating Physician's Opinion

Plaintiff contends that the ALJ erred in declining to give controlling weight to the opinion of her treating physician,

Dr. Kathleen Hayden. The ALJ gave that opinion little weight, finding that it was "not consistent with the evidence [in the record] including Dr. Hayden's own medical treatment records." T. 19. For the reasons discussed below, the Court finds that the ALJ properly evaluated and weighed Dr. Hayden's opinion.

The treating physician rule provides that an ALJ must give controlling weight to a treating physician's opinion if that opinion is well-supported by medically acceptable clinical and diagnostic techniques and not inconsistent with other substantial evidence in the record. See Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004); 20 C.F.R. § 416.927(c)(2). However, "[w]hen other substantial evidence in the record conflicts with the treating physician's opinion . . . that opinion will not be deemed controlling. And the less consistent that opinion is with the record as a whole, the less weight it will be given." Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999) (citing 20 C.F.R. § 404.1527(d)(4)).

In coming to his decision not to afford controlling weight to Dr. Hayden's opinion, the ALJ reviewed the substantial record evidence, which included treatment notes from Dr. Hayden, as well as notes from additional treating sources Drs. John Klibanoff, M. Gordon Whitbeck, and Calvin Chiang, and consulting physician Dr. Donna Miller. Dr. Hayden's treatment notes, which spanned the time period from January 2012 through May 2013, indicate that

plaintiff complained of pain in her back and right knee. Physical examinations throughout this time period, however, showed very little objective evidence substantiating these complaints. Dr. Hayden repeatedly noted MRI findings indicating only mid degenerative changes in the lumbar spine. Physical examinations, where they were noted, demonstrated essentially normal findings. For example, on May 17, 2012, a back examination revealed that plaintiff was "minimally tender to palpation in the SI joint area diffusely." T. 330. On August 12, 2012, plaintiff's musculoskeletal examination and neurological examination revealed normal bilateral strength in the lower extremities and normal bilateral reflexes. On December 12, 2012, Dr. Hayden noted that plaintiff reported tenderness in her L3-L5 right paraspinal area, but that her reflexes were normal bilaterally, and her motor strength was "difficult to assess" due to plaintiff reporting pain with movement of her leg. T. 309. Dr. Hayden recommended conservative treatment, consisting mainly of weight loss and physical therapy.

Records of treatment from other physicians also revealed mild objective findings. In April 2012, Dr. Klibanoff examined plaintiff and, largely based on her subjective complaints, recommended a pain injection for her right knee and a formal spinal evaluation with Dr. Whitbeck. Dr. Whitbeck examined plaintiff later that month, and noted that although plaintiff walked with an antalgic gait, she performed a heel-toe walk with "good strength," "was able to flex

at the waist almost to the level of the ankles with just some mild difficulty," and noted full strength in the lower extremities and normal reflexes. Plaintiff reported pain to palpation at the lumbosacral junction and "mild sciatic notch tenderness bilaterally," as well as uncomfortable range of motion in the right knee, but Dr. Whitbeck stated that "if she were to resume work, there [were] no specific limitations." T. 223. In May 2012, Dr. Whitbeck noted that plaintiff reported tenderness, but noted full strength "without exception in both lower extremities." T. 225. He recommended physical therapy and a lumbar spine MRI.

Despite that recommendation, in June 2012, Dr. Whitbeck noted that plaintiff was "no longer engaged in physical therapy and [was] engaged in a home exercise program inconsitently." T. 226. Dr. Whitbeck noted that spinal MRIs showed only mild degenerative changes, and opined that her pain following a recent fall "should subside over time." T. 226. Dr. Whitbeck once again "placed [no] specific activity restrictions" and "encouraged her to minimize her use of narcotics." Id. In August, Dr. Whitbeck noted that plaintiff was in no acute distress, and although she walked with an antalgic gait and complained of intermittent tenderness, she was able to heel-toe walk "with no difficulty," had full flexion with her hands to her knees, extension and lateral bending were performed without difficulty, strength was full, and reflexes were normal.

In August 2012, Dr. Miller completed a consulting internal medical examination at the request of the state agency. Dr. Miller noted plaintiff's complaints of pain and history of sleep apnea. On physical examination, plaintiff appeared in no acute distress, gait was normal, she had slight difficulty walking on heels and could only squat "50% of normal," and stance was normal. T. 255. Musculoskeletal exam showed full flexion, extension, lateral flexion bilaterally, and full rotary movement of the cervical spine, and no scoliosis, kyphosis, or abnormality in the thoracic spine. Lumbar spine range of motion was limited, but straight leg raising was negative bilaterally. With the exception of some limited range of motion of the knees, her exam was otherwise normal. Dr. Miller opined that plaintiff had "mild to moderate limitation to heavy lifting, bending, carrying, kneeling, and squatting," and that she should avoid dust, irritants, or tobacco source secondary to her asthma.

Despite this record of treatment and Dr. Miller's consulting examination findings, Dr. Hayden completed a medical source statement which assessed plaintiff as being unable to do work even at the sedentary level. According to Dr. Hayden, plaintiff could sit for one hour at a time and stand and walk for only 20 minutes at a time, and sit and stand for two hours and walk for only one hour total during an eight-hour workday. Dr. Hayden also assessed significant limitations with reaching, handling, fingering,

feeling, pushing, and pulling in both hands, and opined that plaintiff could never climb stairs, ramps, ladders, or scaffolds, and could never balance, stoop, kneel, crouch, or crawl. In support of her assessment, Dr. Hayden cited the modest MRI findings noted above and plaintiff's diagnosis of osteoarthritis. Dr. Hayden also opined, however, that plaintiff could perform all of the listed activities of daily living (such as shopping, traveling without a companion, walking a block, climbing a few steps at a reasonable pace using a handrail, and handling and sorting paper files). The only limitation Dr. Hayden noted in activities of daily living was that plaintiff could walk, but not at a "reasonable pace." T. 345.

The Court agrees with the ALJ that Dr. Hayden's restrictive functional assessment was not supported by substantial record evidence. As is apparent from the above discussion, on treatment from Drs. Hayden, Klibanoff, and Whitbeck, plaintiff's examination findings were consistently benign, and there is no indication in the medical record as to why Dr. Hayden assessed such restrictive limitations in plaintiff's sitting, standing, walking, and operation of the upper and lower extremities. Dr. Miller's consulting opinion also supported a conclusion that plaintiff had, at most, mild to moderate limitations in lifting, bending, kneeling, carrying, and squatting. It is apparent from the ALJ's decision that she applied the substance of the treating physician rule, see Atwater v. Astrue, 2013 WL 628072, *2 (2d Cir. 2013), and

as the decision was based on substantial record evidence, it will not be disturbed.

## B.    Severity of Mental Health Impairments

Plaintiff argues that the ALJ erred when she decided that plaintiff's medically determinable mental impairment of depression was nonsevere because it did not cause more than a minimal limitation on plaintiff's ability to perform work activities. In so finding, the ALJ reviewed evidence from Genesee Mental Health Center ("GMHC"), which demonstrated that plaintiff treated with licensed master social worker Tiria Wyjad from September 2012 through May 2013. Those treatment notes reveal that plaintiff was diagnosed with depression, and upon initial evaluation (but not on any later date) she reported that she was suicidal. Throughout the treatment notes, no functional limitations are noted, and her mental status examinations were consistently unremarkable with the exception of a depressed or anxious mood. The treatment notes mainly contain narratives of sessions in which plaintiff discussed ongoing problems in her life, including legal troubles associated with a criminal case against her stemming from her prior job, and concern over her boyfriend's recent health problems.

There are no functional assessments in the record that reflect any limitations resulting from mental impairments. Although plaintiff argues that she treated with Dr. Hayden for depression, the record does not support that contention. Dr. Hayden's treatment

notes reflect a diagnosis of depression, and occasionally note that plaintiff's mood was depressed, sad, or anxious, but do not reflect that Dr. Hayden was a treating provider for purposes of mental impairments. Dr. Hayden's treating source opinion, discussed above, assessed no mental limitations, and noted that plaintiff was capable of performing nearly all activities of daily living. None of the records from GMHC or Dr. Hayden indicate that plaintiff was unable to perform any work activities as a result of her mental impairments.

The Court concludes that substantial evidence supports the ALJ's determination that plaintiff's mental impairment was nonsevere. Significantly, it is apparent from the ALJ's opinion that she considered plaintiff's overall mental functioning when determining plaintiff's RFC, as mandated by the regulations. See 20 C.F.R. §§ 404.1520a, 416.920a; see generally 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.00C. After evaluating plaintiff's functioning in the four domains of activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation; the ALJ concluded that plaintiff's mental impairments had no more than a minimal impact on her ability to perform work activities, and for that reason did not include mental restrictions in the RFC finding. This assessment followed the appropriate legal principles. See Agudo-Martinez v. Barnhart, 413 F. Supp. 2d 199, 211 (W.D.N.Y. 2006) (finding that ALJ's

conclusion that plaintiff's mental impairment was nonsevere was supported by substantial evidence); cf. <u>Parker-Grose v. Astrue</u>, 462 F. App'x 16, 18 (2d Cir. 2012) (noting that remand is necessary where the ALJ fails to properly account for mental limitations in the overall RFC assessment, and where substantial evidence supports finding that limitations resulting from mental impairments existed).

**C.  Credibility**

Plaintiff contends that the ALJ erroneously assessed her credibility. Much of plaintiff's argument focuses on the ALJ's consideration of plaintiff's amended alleged onset date. Initially, plaintiff alleged an onset date of August 1, 2011, but later, upon advice of counsel, amended her alleged onset date to February 4, 2012, which was the date of her last employment. Although the Court agrees that it would have been improper if this had been the ALJ's *sole* consideration in assessing plaintiff's credibility, a reading of the ALJ's decision reveals that the ALJ considered the appropriate factors in determining plaintiff's overall credibility. See 20 C.F.R. §§ 404.1529, 416.929; SSR 96-4p, SSR 96-7p; see also <u>Scitney v. Colvin</u>, 41 F. Supp. 3d 289, 305 (W.D.N.Y. 2014) ("An ALJ need not explicitly list all the credibility factors in his decision so long as it 'set[s] forth sufficient reasoning and was supported by evidence of the record.'"). More specifically, in addition to the issue of plaintiff amending her onset date, the ALJ

considered the circumstances of plaintiff's termination from her prior job, which included a criminal conviction and an order of restitution; evidence that plaintiff had not made any effort to pay said restitution; plaintiff's complaints were out of proportion to the relatively mild objective findings in the record; treatment notes were mostly dated after the plaintiff's application date; physical examinations did not worsen although plaintiff's complaints of pain did; plaintiff was able to perform many basic activities of daily living; and no more than conservative treatment was recommended to treat plaintiff's conditions.

The ALJ's discussion, which incorporates his review of the testimony, indicates that the ALJ used the proper standard in assessing credibility, especially in light of the fact that the ALJ cited relevant authorities in that regard. See Britt v. Astrue, 486 F. App'x 161, 164 (2d Cir. 2012) (finding explicit mention of 20 C.F.R. § 404.1529 and SSR 96-7p as evidence that the ALJ used the proper legal standard in assessing the claimant's credibility); Judelsohn v. Astrue, 2012 WL 2401587, *6 (W.D.N.Y. June 25, 2012) ("Failure to expressly consider every factor set forth in the regulations is not grounds for remand where the reasons for the ALJ's determination of credibility are sufficiently specific to conclude that he considered the entire evidentiary record."). Thus, the Court finds no error in the ALJ's credibility determination.

**VI.   Conclusion**

For the foregoing reasons, plaintiff's motion for judgment on the pleadings (Doc. 8) is denied and the Commissioner's cross-motion (Doc. 13) is granted. The ALJ's finding that plaintiff was not disabled is supported by substantial evidence in the record, and accordingly, the Complaint is dismissed in its entirety with prejudice. The Clerk of the Court is directed to close this case.

**ALL OF THE ABOVE IS SO ORDERED.**


**S/Michael A. Telesca**
HON. MICHAEL A. TELESCA
United States District Judge

Dated:      November 24, 2015
            Rochester, New York.